No. 13,429.

MERROW v. SILVERSMITH ET AL.
(43 P. [2d] 170)

Decided March 25, 1935.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

Merrow sued Silversmith and the National Insurance Company, of which Silversmith was president, and his case was tried to the court. To an adverse judgment, he assigns error. Reference to the parties will be by name as Merrow, Silversmith and the company.

The question involved is one of agency, and its solution rests upon the construction of an alleged oral contract. Blackwell, a witness for plaintiff, testified that he was employed by Silversmith as an agent to sell stock of the company; that he called upon Merrow at Sedalia, Colorado, who was there employed as railway agent; that he tried to sell Merrow stock of the company at $5 per share; that Merrow was not interested, but said he had 50 shares of General Stockyards preferred stock to sell; that he, Blackwell, offered to buy Merrow's stock at $95 per share and accrued interest, if Merrow would let him use the proceeds of the sale, in National Insurance Company stock for 90 days; that he told Merrow that he represented the company; that he returned to Denver and told Wexler, the company secretary, the details of his proposal to Merrow; that he and Wexler went to Schlessinger, a director of the company, who arranged with a brokerage house, for sale of the Merrow stock at $96 and accrued interest; that the following Saturday night Merrow came to Denver and was met by Blackwell at the office of Moore, an uncle of Blackwell; that he renewed the offer to buy Merrow's stock, and agreed to give him $750 and use $4,000 for 90 days; that Merrow endorsed his stock and gave it to him. He further testified: "My (final) agreement with Mr. Merrow was that I would pay him $4,000—$95 and accrued interest for his General Stockyards stock, get him in cash $750 plus accrued dividend; give him 800 shares of National Insurance Company stock, which he was to hold for a period of 90 days;

at the expiration of that time he was to receive his $4,000;'' that on Monday, he gave Merrow's stock to Wexler and told Silversmith that ''we'' would have to sell the 800 shares in 90 days, to get Merrow's money back.

It appears that Merrow's stock was sold by the brokerage company and check was made to Silversmith for $4,853.17. Silversmith kept $3,200, gave Blackwell a check for $1,453.17, and of this amount, Blackwell sent Merrow $750 together with 800 shares of the company stock to be held as per agreement with Blackwell. At expiration of 90 days Merrow demanded his money of Blackwell. Blackwell, having been unable to sell the 800 shares, discussed the matter with Wexler and Silversmith, and he and Wexler tried to find a market for the stock. Blackwell obtained 200 shares from Merrow and sold same for $500 which amount he sent to Merrow with a receipt for 100 shares. Merrow then brought this suit for $3,500.

The defendant Silversmith testified, in substance: That he never saw Merrow until after suit was commenced; that Blackwell was brought to his office by Wexler; that Blackwell wanted an option on some of the stock of the National Insurance Company; that he told Blackwell there was no company stock for sale and that he could not give him an option; that he would give him an option on some of his personal stock, about 1500 shares, at $4 net to him; that he was trying to pay off some indebtedness to banks; that about 10 days later Blackwell came to his office and said he had a customer for 800 shares and was told he could have the stock at $4 per share; that he never saw the Merrow stock; that after the check from the brokerage company was received, Blackwell told him to issue 800 to Merrow; that he had no agreement with Blackwell regarding the purchase of Merrow's stock or the resale of National Insurance Company stock; that later Blackwell wanted to borrow 100 shares, because he was in difficulty with Merrow; that he never employed

Blackwell as agent and never gave him any literature of the company to distribute and never authorized the sale of Merrow's stock to the brokerage company.

Wexler, testified for defendants substantially as follows: That he is adjuster and assistant secretary for National Insurance Company; Blackwell told him that he was opening an office and was going to sell whatever stock he could obtain; that he told Blackwell that Silversmith might sell some of his personal stock in the National Insurance Company, as he needed money; that he made up some company literature and gave it to Blackwell; that he never heard of the 90 day contract with Merrow until suit was started.

Merrow testified that Blackwell told him he was an agent of the company, and otherwise substantially the same as Blackwell concerning the transaction between himself and the latter; that he had not dealt with the company direct and never made any demand of it for his money. Other witnesses testified, giving no particular light on the question of agency or an option. Without a further discussion of the evidence, we now can say, that, accepting Blackwell's statement as to his agency for the company, it was an agency to sell company stock only, and did not include authority to borrow money, pledge stock, or authority to enter into such an agreement as he made with Merrow. Merrow had full opportunity to make inquiry as to Blackwell's authority and admits he did not do so. Failing in this he dealt with Blackwell at his peril. Merrow alleged the agency, and on him rested the burden of proof.

There is a striking conflict in the evidence of the two parties as to whether Blackwell was given an agency, or an option to sell Silversmith's stock. There is no evidence that the company participated in or received any of the proceeds from the transaction. Thus Merrow's case rested upon disputed questions of fact, which issue of fact the trial court, in no uncertain terms, determined against him. This determination, manifestly not against

the weight of the evidence, will not be disturbed. We quite agree with the trial court in its conclusions, as we understand them, that Merrow sued the wrong parties.

Judgment affirmed.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE BOUCK concur.